*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WRIGHT, Minors.

UNPUBLISHED
September 3, 2019

No. 347803
Wayne Circuit Court
Family Division
LC No. 17-000053-NA

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Respondent mother appeals as of right the trial court's order terminating her parental rights to her minor children, CW, TW, and AW, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent).[1] Specifically, respondent contends that termination was not in the best interests of the eldest child, CW. We affirm.

## I. FACTS

Child Protective Services became involved with respondent and the children at issue in November 2016. In January 2017, petitioner, the Department of Health and Human Services, petitioned for emergency removal of the children from respondent's home after CW reported at a Kids Talk interview that two males had sexually abused her in respondent's home in separate incidents, and that respondent knew about the abuse but did nothing. Respondent was observed to be intoxicated while caring for her children, there were concerns about her alcoholism and a lot of male traffic coming in and out of the home, and CW disclosed that respondent engaged in physical abuse of her and her siblings. The trial court issued an order finding it contrary to the children's welfare to remain in respondent's home and authorizing their immediate removal.[2]

---

[1] The parental rights of the father of TW and AW were also terminated under MCL 712A.19b(3)(a)(*i*) (parent is unidentifiable).

[2] Hearings were conducted by a referee. See MCR 3.912, MCR 3.913, and MCR 3.991.

Following completion of a preliminary examination, the court authorized petitioner's amended petition and exercised jurisdiction over the children pursuant to MCL 712A.2(b)(1) (parent, when able to do so, neglects or refuses to provide proper or necessary support or care) and (b)(2) (unfit home or environment), making them temporary wards of the court. Following an adjudication hearing, the court ordered respondent to participate in a psychological evaluation and follow all recommendations, and to attend outpatient substance abuse therapy, an alcoholics support group (such as Alcoholics Anonymous), weekly random drug screens, and family therapy. In addition, she was to maintain suitable housing, obtain suitable income, stay in contact with the foster-care worker, attend visitation with the children, and attend all court hearings.

During several review hearings held over the next 17 months, the foster-care worker assigned to respondent's case reported that respondent either was not complying with or was not benefitting from services. Respondent completed her psychological evaluation, but did not follow through with the evaluator's recommendations. She attended substance abuse therapy until she was dismissed for failure to participate, and she went months without submitting any drug screens or submitted screens that were positive for alcohol. Respondent was given weekly supervised visitations with her children, but the foster-care worker reported that she missed numerous scheduled visitations, arrived late or left early at others, smelled of alcohol and appeared to be intoxicated when she did arrive, and refused to submit to alcohol screens when asked to do so by agency workers. When screened after court appearances, respondent more than once tested positive for high levels of alcohol in her blood. She did not provide evidence of her attendance at AA meetings or a similar support group,[3] and of the 75 drug screens required, respondent missed approximately 52 and tested positive for five.

Following a dispositional review in June 2018, the court ordered petitioner to initiate a petition to terminate respondent's parental rights to the three minors. Complying with the court's order, petitioner filed a supplemental petition in August 2018 seeking termination of respondent's parental rights pursuant to MCL 712A.19(b)(3)(g) and (j). After the first day of the termination hearing in October 2018, the court ordered respondent to submit to a drug screen and to participate in a Clinic Evaluation prior to the termination decision. According to the post-hearing screen, respondent's blood alcohol level was .223.

Respondent and the children participated in an evaluation two weeks later, in early November 2018. The clinician interviewed respondent, the children, CW's biological father, and one of the foster parents for AW and TW, and observed respondent's interaction with the children. When the termination hearing resumed in late November, the clinician's nine-page report was admitted into evidence for purposes of the best-interests determination without objection from the parties. After the termination hearing, the court entered an order finding that petitioner had provided clear and convincing evidence of grounds to terminate respondent's

_____

[3] Respondent provided attendance sheets documenting her attendance at meetings during the two weeks separating the first and second days of the termination hearing.

rights under MCL 712A.19(b)(3)(c)(*i*),[4] (g), and (j), and that a preponderance of the evidence established that termination was in the best interests of the children.

## II. ANALYSIS

On appeal, respondent does not challenge the trial court's order regarding the statutory grounds for termination. Her sole argument is that the court erred by finding that termination of her parental rights was in the best interests of CW.[5] We disagree.

We review a trial court's findings regarding a child's best interests under the clearly erroneous standard. MCR 3.977(K); *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). To be clearly erroneous, a decision must be more than maybe or probably wrong. *In re Sours Minors*, 459 Mich, 624, 633; 593 NW2d 520 (1999).

If the trial court finds "that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "In deciding whether termination is in the child's best interest, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). The trial court may also consider " 'the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the child[]'s wellbeing while in care[.]' " *In re White*, 303 Mich App at 713-714, quoting *In re Olive/Metts*, 297 Mich at 41-42. Whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

In considering whether termination of respondent's parental rights was in CW's best interests, CW's age and preference weighed heavily in the analysis. At the time of the termination hearing, CW was a young teenager who shared a strong bond with her mother. She told the clinician during the clinical evaluation that she would like to live with respondent if respondent "were okay." Adoption was not at issue because CW was in the custody of her biological father, with whom she had reunited and bonded over the course of the proceedings. The court determined, however, that respondent was not going to overcome her long-standing alcoholism before CW became an adult. The court decided that CW needed "closure" at this point in her life, and found that the evidence preponderated in favor of termination being in CW's best interests.

---

[4] At petitioner's request, the referee conformed the petition to the proofs and found grounds to terminate under subsection (3)(c)(*i*).

[5] Respondent does not challenge termination with regard to AW or TW.

Our review of the record evidence does not leave us with a definite and firm conviction that the trial court erred in terminating respondent's parental rights to CW. *In re Mason*, 486 Mich at 152. The record supports the court's conclusion that respondent was not soon likely to overcome her addiction to alcohol. Respondent told the clinician that her family had a history of alcoholism and that her mother had consumed alcohol while pregnant and had put alcohol in respondent's bottle to help respondent go to sleep. She remembered asking for and being given alcohol at the age of five or six, and said that, by the age of 14, she could drink half-a-gallon of alcohol in one night. She described herself as a "happy drinker," and said she had never been overly intoxicated in front of, or abusive to, her children. Given respondent's history of exposure to alcohol, her disinclination to admit its impact on her life, and the fact that she did not comply with or benefit from the substance abuse component of her service plan, we cannot say that the court erred in its observation that respondent was unlikely to overcome her alcoholism before CW reached legal adulthood.

The record also supports the court's observation that CW had experienced the negative effects of respondent's drinking. CW testified at the adjudication trial that she knew the difference between when respondent was intoxicated and when she was sober and that respondent "always drinks" and was "always drunk." She said that respondent tended to become verbally and physically aggressive when intoxicated and recounted one time when respondent pulled her hair and several times when she "put her out of the house." CW also said that respondent's behavior caused her stress, anxiety, and sadness, and that she tried to protect her siblings from respondent. She testified at both the adjudication hearing and the termination hearing that she loved respondent and knew respondent loved her. And she told the clinician, as relayed by the clinician in the clinician's words, that "if her mother was okay, she would like to return to the home of her mother." However, CW expressed her frustration to the clinician that she and her siblings were still involved in child protective proceedings because her mother had not committed to stop drinking, which CW believed respondent was capable of doing. CW indicated that she had observed respondent drinking for many years, losing control, and becoming physically abusive toward her, but she would never let respondent hurt her siblings.

Although respondent and CW shared a significant parent-child bond, all of the other factors that the court considered suggested that termination of respondent's parental rights was in CW's best interest. The record indicates that CW was subject to abuse when her mother was drinking, that she had taken on the role of protector for her younger siblings at a time when she herself was still a child, and that she was frustrated with respondent's broken promises and resistance to committing to addressing her alcoholism. Respondent's visitation record was spotty and she was non-compliant with her services plan. The record further suggests that respondent could not—or did not—protect CW from harm when she was drinking. In light of these facts, we cannot say that the court erred in its decision that CW's need for permanency, stability, finality, and safety outweighed the parent-child bond, and that a preponderance of the evidence established that termination of respondent's parental rights was in CW's best interests.

Respondent does not dispute any of the court's findings during the best-interests phase of the proceedings. Instead, she argues that the court failed to consider CW's placement with her biological father when making the best-interests determination and that such "relative" placement weighs against termination. Respondent misconstrues the law.

It is true that "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43, quoting *In re Mason*, 486 Mich at 164. Further, "[a] trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*. However, MCL 712A.13a(1)(j) does not include the biological father in its definition of "relative." See *In re Schadler*, 315 Mich App 406, 413; 890 NW2d 676 (2016). Therefore, the court was not required to consider CW's placement with her biological father as a "relative" placement in the best-interests determination, and the trial court did not err in ordering respondent's parental rights to all three children terminated.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron